29 C.C.P.A. (Patents)

**BALL v. HODGSON et al.**

**Patent Appeal No. 4579.**

Court of Customs and Patent Appeals.

June 1, 1942.

Rehearing Denied July 3, 1942.

Henry E. Stauffer, of Washington, D. C. (Arthur Middleton, of New York City, and Henry B. Stauffer, of Washington, D. C., of counsel), for appellant.

Frank H. Hubbard, of Milwaukee, Wis. (W. C. Lyon, of Milwaukee, Wis., of counsel), for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Judge.

This is an appeal, in an interference proceeding, by the senior party Ball from a decision of the Board of Appeals of the United States Patent Office. The Examiner of Interferences awarded to appellees priority of invention of the subject matter defined in all of the counts, 1, 2, 3, 4 and 5, and held that they were the first to conceive the invention and reduce it to practice and also that even if appellant were assumed to be the first to conceive the invention he was the last to reduce it to practice and was not diligent from about the time appellees entered the field until appellant's filing date. The Board of Appeals reversed the holding of the examiner in so far as he held that appellees were entitled to a prior date of conception as to counts 1, 2, 3 and 4 and affirmed the decision as to those counts in all other respects. With regard to count 5, the board, in a supplemental decision, affirmed the decision of the examiner. Both decisions of the Patent Office tribunals held that the invention as defined in the counts was reduced to practice by appellees by June 28, 1938.

The interference involves a patent to appellant No. 2,150,813 granted March 14, 1939 upon an application Serial No. 235,715, filed October 19, 1938 and a joint application of appellees Serial No. 267,143, filed April 10, 1939.

The interference as originally declared included counts 1, 2, 3 and 4 and, after preliminary statements had been filed by the parties, on motion of appellees count 5 was added. A preliminary statement of appellee was thereafter filed as to count 5.

It appears that counsel for appellant, on December 9, 1938, filed a petition supported by his affidavit requesting that the said application of appellant "be made special" in view of alleged "circumstances of infringing devices now being offered, made and sold by Cutler-Hammer, Inc., of Milwaukee, Wisconsin." Cutler-Hammer, Inc., is the assignee of appellees. The petition was granted and a patent issued to appellant, as hereinbefore stated, on March 14, 1939.

The counts herein all originated as claims in the patent of appellant and were copied by appellees who requested the interference. In the request, counsel for appellees answering the said charge of infringement stated as follows: ·

"Ball's allegation that the Cutler-Hammer device to which he called attention is responsive to the claims solicited by him is believed to be erroneous, but the structure shown in the instant application appears to be fully responsive to the Ball claims which have been copied in said application."

In each of the preliminary statements of appellees the following statement appears: "They have not built the specific device shown in their application in interference but did embody in a full size machine which was completed between May 6, 1938 and June 13, 1938 the Cutler-Hammer, Inc. construction referred to in the Middleton affidavit filed in the Ball application for the patent in interference, which construction was averred in said affidavit to infringe Ball's claims and which construction not conceded to infringe any claims of Ball's said patent constitutes the subject matter of application Serial No. 267,142, filed April 10, 1939 by H. E. Hodgson, C. W. Kuhn and W. C. Stevens."

The invention relates to improvements in power driven valves such as are employed in the oil industry.

Counts 1 and 5 are illustrative and read as follows:

"1. In a power driven control apparatus, such as a power controlled valve construction, a threaded actuating spindle therefor, operable between limits of longitudinal movements, one of which limits is fixed, and a base construction in which operates said spindle, mechanism for raising and lowering said spindle, comprising a rotatable nut member upon said spindle, the rotation of which nut member will raise and lower said spindle, a non-rotatable thrust member with respect to which said nut member rotates, said thrust member having rotation preventing association with said base portion and being bodily axially movable together with said nut member, said nut member having thrust transmitting engagement with said thrust member, spring means effective upon said thrust member to yieldingly restrain axial movement thereof and consequently of said nut member away from said base construction, said nut member, and spring pressed thrust member constituting a thrust responsive assembly; drive mechanism for said nut member comprising a housing fixed relative to said base construction and substantially superposed upon said thrust responsive assembly, and a rotary axially non-shiftable power driven member in driving engagement with said axially movable nut member."

"5. Mechanism according to Claim 1, in which a unitary housing surrounds said thrust responsive assembly and surrounds and supports said drive mechanism, and is fastened to said base construction."

Counts 2, 3, 4 and 5 are based on count 1 and the Board of Appeals described the involved invention as follows:

"As will be observed on a reading of the count [count 1], it is quite specific. The alleged novelty resides largely in the specific means employed to compensate for shock in motor-driven gearing embodying a threaded actuating spindle having a fixed limit of movement in one direction. Both parties apply their power-driven control apparatus to the actuating spindle of a valve. The valves with which the actuating mechanism was intended to be used are valves of quite massive size, the movable elements of which may weigh 1,000 lbs. or more."

■ Since the application of appellees was not filed until after the patent issued to appellant, they had the burden of proving their case beyond a reasonable doubt. We do not think that this burden has been lightened, as is urged by appellees, simply by

reason of the expediting of appellant's application for patent.

Both parties took testimony. It is not necessary here to discuss the record made on behalf of appellant, except with respect to diligence during the critical period, for the reason that he admits in his brief that he is confined to his filing date, October 19, 1938, for constructive reduction to practice. Appellant contends that appellees' record does not prove a structure having any of the essential limitations defined by the counts, but does not question the correctness of the dates May 6, 16 and 15, 1938, respectively, appearing on appellees' Exhibits 17, 18 and 20. Those exhibits coupled with oral testimony constituted the principal basis upon which the Board of Appeals affirmed the decision of the Examiner.

It appears that appellees, who are engineers employed by the Cutler-Hammer Company engaged in the manufacture of valve control mechanisms, early in the year 1938 were endeavoring to solve a problem of sticking or jamming of large valves in power operating units. That kind of valve requires much power for its operation and electric motors geared to rotate a nut cooperating with the valve stem are used for opening and closing the valves. Appellees in their work on the problem studied the efficacy of a spring compensated drive member. The force of the spring is opposite in direction to the force which closes the valve so that when the closing member of the valve is seated the valve is not so firmly closed as to become stuck or if the movement of the valve should be suddenly stopped the mechanism would not be liable to be broken.

Appellees' Exhibit 20 is a photostat of a drawing dated May 15, 1938. It discloses a spring and bolt structure which is practically identical to that contained in the principal drawing shown in the joint application. It shows that in the device there are two thrust adjusting screws to regulate the compression of the spring, two mounting screws for holding the spring assembly between plates, the spring assembly separately mounted on a valve yoke and eight mounting screws for the entire spring unit. There can be no doubt that that exhibit discloses the subject matter defined in the counts. The record shows that a copy of that drawing was received by the patent attorney for Cutler-Hammer on or about May 15, 1938.

Exhibits 17 and 18 are blueprints of the device which if considered apart from the

rest of the record we do not think would prove conception of the invention by appellees, but when considered in the light of contemporaneous Exhibit 20 it is clear to us that appellees established a conception of the invention by at least May 16, 1938.

Later in the month of May or early part of June, 1938, a valve driving device was constructed from the said blueprints under the direction of the experimental test engineer at the plant of the Cutler-Hammer Company. The record shows that the device was completed on June 13, 1938. On the following day it was mounted on a Powell valve of the Sun Oil Company and tested by operating it to open and close the valve under various spring pressures. The source of the pressure in the valve was through a compressed air line in the testing laboratory. It is shown that the tests proved satisfactory and the entire combination as tested was shipped by express to the Sun Oil Company on June 28, 1938.

The Sun Oil Company further tested the device through the summer of 1938 and later put it into service. It is clearly shown that the mechanism was observed as working in the Sun Oil Company's plant at Marcus Hook, Pennsylvania, on July 8 or 9, 1938, and on September 13, 1938. It is further shown that on November 13 and 23, 1938, and on December 2, 1938, the Cutler-Hammer Company received orders for devices similar to the one which it tested and which was put into service by the Sun Oil Company.

■ We find nothing in the record from which we could conclude that the tests conducted by the Cutler-Hammer Company were insufficient even though the Sun Oil Company ran tests of its own upon the device subsequent to the former tests. We think that the Board of Appeals quite reasonably concluded that the later tests were for the purpose of determining the durability of the device. In view of what has been set out hereinbefore we are convinced appellees have established beyond a reasonable doubt that they conceived the involved invention at least by May 16, 1938, and reduced it to practice at least by June 28, 1938 (the date of shipment to the Sun Oil Company).

Appellant contends that the appellees are not entitled to a date of reduction to practice prior to their filing date because of the statement made in each of their preliminary statements that they had not built the specific device shown in their applica-tion, which statement we have fully set out in this opinion. On this phase of the case, the board, we think properly, observed as follows:

"We are unable to see that Hodgson et al. are precluded from establishing an earlier date of reduction to practice because of the statement quoted. Even though the complete mechanism which was constructed embodied a contribution of Stevens, as well as contributions of Hodgson and Kuhn, we think it may fairly be held that, in so far as this device supports, in common with the present application of Hodgson and Kuhn, the counts in issue, it may be relied upon to establish a reduction to practice thereof.

"The device of the application of Hodgson, Kuhn and Stevens, which the allegation states corresponds to the device actually constructed, obviously contains many features which are not involved in the present counts, such, for instance, as the limit switch mechanism and the particular manner of associating the same with the compensator and also the hand-operating mechanism. Conceivably these features may have been the ones as to which Stevens collaborated."

■ Whatever may have been the features not contained in the present counts which were in the device that was built according to the application of appellees and Stevens, nevertheless the record here clearly shows that the device which was constructed comprised all of the elements which go to make up the counts herein. Therefore we conclude that the board did not err in refusing to agree with that contention of appellant.

■ Appellant also contends that joint invention by appellees was not established. It is our view, as it was that of the board, that the record shows many conferences between the appellees on the subject matter of the invention and some of the sketches appear to have been their joint work. We find nothing in the record taken as a whole from which we would infer that the invention is not the product of inventive joint effort on the part of appellees.

■ We cannot agree with appellant that he was diligent from immediately before the time that appellees entered the field on May 11, 1938, until he filed his application on October 19, 1938. Appellant's own testimony establishes that he did nothing relating to the involved invention from January, 1938, until June 14, 1938. During that

period appellant, under the impression that the invention he had conceived might infringe a certain patent, was merely seeking rights under that patent, which rights he secured in June, 1938. He subsequently discovered that the claims in the patent "covered revolving springs and not stationary, as in our own design". Manifestly there was no error in the decisions of the tribunals below in holding that appellant did not exercise due diligence toward reducing the invention to practice. Wilson et al. v. Sherts et al., 81 F.2d 755, 23 C.C.P.A., Patents, 914, 924; Hull v. Davenport, 90 F.2d 103, 24 C.C.P.A., Patents, 1194.

The decision of the Board of Appeals is affirmed.

Affirmed.